## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

ZURICH AMERICAN INSURANCE COMPANY, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, XL SPECIALTY INSURANCE COMPANY, and XL REINSURANCE AMERICA, INC.,

**Plaintiffs,**

v.

L.P.C.&D., INC., LAS PIEDRAS CONSTRUCTION CORP., TEJO, INC., EQUIPMENT DEPOT, INC., KANE CARIBBEAN, INC., PIEZAS EXTRA, INC., EQUIPOS DE BOQUERÓN, INC., CARIBBEAN RACEWAY PARK, INC., HACIENDA CUCO, INC., and PEDRO FELICIANO BENÍTEZ,

**Defendants.**

Civil Action No.: 24-cv-1538

Breach of Contract, Specific Performance, Civil Code Indemnity, Common Law Indemnity, Exoneration, Quia Timet

---

### COMPLAINT

---

**COME NOW**, Plaintiff, Zurich American Insurance Company ("Zurich"), Plaintiff, Fidelity and Deposit Company of Maryland ("F&D"), Plaintiff, XL Specialty Insurance Company ("XL Specialty"), and Plaintiff, XL Reinsurance America, Inc. ("XL Reinsurance") (collectively, Zurich, F&D, XL Specialty, and XL Reinsurance are referred to herein as, "Sureties") by and through their undersigned counsel, and file this Complaint against Defendant, L.P.C.&D., Inc. ("LPCD"), Defendant, Las Piedras Construction Corp. ("Las Piedras"), Defendant, Tejo, Inc. ("Tejo"), Defendant, Equipment Depot, Inc. ("EDI"), Defendant, Kane Caribbean, Inc. ("KCI"), Defendant, Piezas Extra, Inc. ("PEI"), Defendant, Equipos de Boquerón, Inc. ("EBI"), Defendant, Caribbean Raceway Park, Inc. ("CRP"), Defendant, Hacienda Cuco, Inc. ("HCI"), and Defendant,

Pedro Feliciano Benítez ("Benítez") (collectively, LPCD, Las Piedras, Tejo, EDI, KCI, PEI, EBI, CRP, HCI, and Benítez are referred to herein as, "Indemnitors") and in support thereof, states as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Zurich is a corporation organized under the laws of the State of New York, with its principal place of business located in Schaumburg, Illinois, and is authorized to do business in the Commonwealth of Puerto Rico.

2.      F&D is a corporation organized under the laws of the State of Illinois, with its principal place of business located in Schaumburg, Illinois, and is authorized to do business in the Commonwealth of Puerto Rico.

3.      XL Specialty is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Stamford, Connecticut, and is authorized to do business in the Commonwealth of Puerto Rico.

4.      XL Reinsurance is a corporation organized under the laws of the State of New York, with its principal place of business located in Stamford, Connecticut, and is authorized to do business in the Commonwealth of Puerto Rico.

5.      Las Piedras is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Las Piedras, Puerto Rico.

6.      LPCD is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Las Piedras, Puerto Rico.

7.      Tejo is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Las Piedras, Puerto Rico.

8.      EDI is a corporation organized under the laws of the Commonwealth of Puerto

Rico, with its principal place of business located in Caguas, Puerto Rico.

9.    KCI is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in San Juan, Puerto Rico.

10.    PEI is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Caguas, Puerto Rico.

11.    EBI is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Las Piedras, Puerto Rico.

12.    CRP is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Las Piedras, Puerto Rico.

13.    HCI is a corporation organized under the laws of the Commonwealth of Puerto Rico, with its principal place of business located in Las Piedras, Puerto Rico.

14.    Benítez is an individual who is a citizen of the Commonwealth of Puerto Rico and is otherwise sui juris.

15.    This Court has jurisdiction over this cause under 28 U.S.C. § 1332(a)(1) in that the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00 and is between citizens of different states.

16.    Venue is proper in this Court under 28 U.S.C. § 1391 because Benítez resides in this District, the Indemnitors have their principal place of business in this District, and the acts and omissions giving rise to the Sureties' causes of action occurred in this District.

<u>**FACTS COMMON TO ALL COUNTS**</u>

17.    As part of their respective businesses, the Sureties issue performance and payment surety bonds for selected construction contractors in the Commonwealth of Puerto Rico.

18.    LPCD is a general contractor that required surety performance and payment bonds on various construction projects.

## THE ZURICH AND F&D INDEMNITY AGREEMENT

19.    On or about May 24, 2004, before Zurich or F&D issued any bond naming LPCD as principal, the Indemnitors each executed an Agreement of Indemnity ("Zurich GAI") as an inducement for Zurich and F&D to execute and issue bonds for various projects on behalf of LPCD. A true and correct copy of the Zurich GAI is attached hereto as **Exhibit "A"** and incorporated herein by reference.

20.    The execution of the Zurich GAI, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent to Zurich and F&D issuing any bond naming LPCD as a principal.

21.    The Zurich GAI provides that the term "Surety" shall mean: "ZURICH AMERICAN INSURANCE COMPANY and its Subsidiaries and Affiliates including, but not limited to FIDELITY AND DEPOSIT COMPANY OF MARYLAND. . . ."

22.    According to the Zurich GAI, Indemnitors specifically agreed, in part, to the following:

> Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety.

23.    Indemnitors further agreed,

In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

24. Indemnitors further agreed,

The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

25. Indemnitors further agreed that they would provide Zurich and F&D "reasonable access to the books, records, and accounts of the Contractor, and Indemnitors."

26. Indemnitors further agreed that: (i) their obligations under the Zurich GAI shall apply to any bonds issued on behalf of any entity upon the request of LPCD; (ii) the obligations of the Indemnitors under the Zurich GAI are joint and several; and (iii) the terms and conditions of the Zurich GAI inure to the benefit of all of the Sureties.

27. The Zurich GAI is unequivocal and specific in setting forth Indemnitors' obligations to exonerate, indemnify, and keep indemnified Zurich and F&D from and against any and all liability for losses and/or expenses and from and against all such losses and/or expenses that Zurich or F&D may sustain and incur in connection with any bonds or the Zurich GAI.

28. The Zurich GAI is unequivocal and specific in setting forth the Indemnitors' obligation to make payment to Zurich and F&D as soon as liability exists or is asserted against

Zurich or F&D, whether or not Zurich or F&D has made payment therefor, equal to the amount of the reserve set by Zurich or F&D.

29.     The Zurich GAI is unequivocal and specific in setting forth the Indemnitors' obligation to promptly upon demand pay to Zurich and F&D all losses and expenses incurred by Zurich or F&D.

30.     The Zurich GAI is unequivocal and specific in setting forth the Indemnitors' obligations to provide Zurich and F&D access to their books, records, and accounts.

### THE XL SPECIALTY AND XL REINSURANCE INDEMNITY AGREEMENT

31.     On or about June 18, 2004, before XL Specialty or XL Reinsurance issued any bond naming LPCD as principal, the Indemnitors each executed an Agreement of Indemnity ("XL GAI") as an inducement for XL Specialty and XL Reinsurance to execute and issue bonds for various projects on behalf of LPCD. A true and correct copy of the XL GAI is attached hereto as **Exhibit "B"** and incorporated herein by reference.

32.     The execution of the XL GAI, and the Indemnitors' undertaking of the various responsibilities and obligations contained therein, were absolute conditions precedent to XL Specialty and XL Reinsurance issuing any bond naming LPCD as a principal.

33.     The XL GAI defines the term "Surety" to mean: "XL Specialty Insurance Company, XL Reinsurance America, Inc. . . . and their affiliated, associated and subsidiary companies, their successor and assigns . . . ."

34.     The XL GAI defines the term "Principal" to mean:

One or more [of the Indemnitors] or any existing or future partnership, joint venture (whether silent or disclosed), association, limited liability company, corporation or other legal or commercial entity in which [one or more of the Indemnitors] have or will have a substantial, material and/or beneficial interest, including subsidiary, associated and affiliated companies who alone or with other PERSON(S) have

secured or may secure the performance and fulfillment of obligations by BOND(S), executed, provided or procured by [XL Specialty and XL Reinsurance].

35.    According to the XL GAI, Indemnitors specifically agreed, in part, that the XL GAI "shall be liberally construed so as to protect, exonerate, hold harmless and indemnify" XL Specialty and XL Reinsurance.

36.    According to the XL GAI, the Indemnitors further agreed, in part, that they would:

[E]xonerate, hold harmless, indemnify, and keep indemnified [XL Specialty and XL Reinsurance] from and against any and all losses, claims, liabilities, damages, demands for payment or performance, expenses and costs of whatsoever kind or nature including, but not limited to, interest, court costs, document reproduction and storage charges, investigative expenses and costs, adjusting, expert and attorney fees imposed upon, sustained or incurred by [XL Specialty and XL Reinsurance] by reason of: (1) [XL Specialty and XL Reinsurance] having executed, provided or procured BOND(S) in behalf of PRINCIPAL; (2) [Indemnitors'] failure to perform or comply with any of the provisions of this AGREEMENT; (3) [XL Specialty and XL Reinsurance] enforcing any of the covenants or conditions of this AGREEMENT; (4) [XL Specialty and XL Reinsurance] conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any BOND(S); and/or (5) [XL Specialty and XL Reinsurance]prosecuting or defending any action or claim in connection with any BOND(S) executed provided or procured in behalf of [LPCD], whether [XL Specialty and XL Reinsurance]at its sole option elects to employ its own counsel, or permits or requires [Indemnitors] to make arrangements for [XL Specialty's and XL Reinsurance's] legal representation.

37.    According to the XL GAI, the Indemnitors further agreed, in part, that:

In order to exonerate, hold harmless and indemnify [XL Specialty and XL Reinsurance], [Indemnitors] shall upon demand of [XL Specialty and XL Reinsurance] deposit funds with [XL Specialty and XL Reinsurance] before [XL Specialty and XL Reinsurance] makes any payment; such funds shall be, at [XL Specialty's and XL Reinsurance's] option, money or property or liens on or security interests in property. The amount of such money or property or the value of the property to become subject to liens or security interests shall, at the option of [XL Specialty and XL Reinsurance], equal (1) the sum of all pending claims asserted against [XL Specialty and XL Reinsurance] on BOND(S), whether such claims are contested or not or whether or not liability has been established with respect to such claims, plus the amount of costs and expenses which [XL Specialty and XL Reinsurance], in its sole discretion, estimates may be incurred as a result of the assertion of such claims, or (2) the reserve established by [XL Specialty and XL

Reinsurance] as consequence of having issued BOND(S) in behalf of [LPCD]. [XL Specialty and XL Reinsurance] shall have no obligation to invest or provide a return on the funds deposited. [Indemnitors] acknowledge that failure of [Indemnitors] to deposit funds with [XL Specialty and XL Reinsurance] in accordance with this section in the amounts and at the time demanded by [XL Specialty and XL Reinsurance] shall cause irreparable harm for which [XL Specialty and XL Reinsurance] has no adequate remedy at law. [Indemnitors] agree that [XL Specialty and XL Reinsurance] shall be entitled to injunctive relief for specific performance of [Indemnitors'] obligation to deposit funds with [XL Specialty and XL Reinsurance] in accordance with this section.

38.    Indemnitors further agreed,

The liability of [Indemnitors] under this [XL GAI] shall extend to and include all amounts paid by [XL Specialty and XL Reinsurance] in Good Faith under the belief that: (1) [XL Specialty and XL Reinsurance] is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; or (2) such payments were necessary or advisable to protect any of [XL Specialty's and XL Reinsurance's] rights or lo avoid or lessen [XL Specialty's and XL Reinsurance's] liability or alleged liability.

39.    Indemnitors further agreed,

The voucher(s) or other evidence of such payment(s) or an itemized statement of payment(s) sworn to by an officer of [XL Specialty and XL Reinsurance] shall be prima facie evidence of the fact and the extent of the liability of [Indemnitors] to [XL Specialty and XL Reinsurance].

40.    Indemnitors further agreed,

[XL Specialty and XL Reinsurance] shall have the right in its sole discretion to determine whether any claims, demands, suits or judgments on or against BOND(S) provided, procured or executed by [XL Specialty and XL Reinsurance] shall be paid, compromised, defended, prosecuted or appealed irrespective of the fact that [Indemnitors] may have assumed, or offered to assume, the defense of [XL Specialty and XL Reinsurance] upon such claim, demand, suit or judgment.

41.    Indemnitors further agreed that XL Specialty and XL Reinsurance would "have access to the books, records, . . . and accounts" of the Indemnitors.

42.    Indemnitors further agreed that: (i) their obligations under the XL GAI shall apply to all bonds issued on behalf of LPCD; (ii) the obligations of the Indemnitors under the XL GAI

are joint and several; and (iii) the terms and conditions of the XL GAI inure to the benefit of all of the Sureties.

43.    The XL GAI is unequivocal and specific in setting forth Indemnitors' obligations to exonerate, indemnify, and keep indemnified XL Specialty and XL Reinsurance from and against any and all liability for losses and/or expenses and from and against all such losses and/or expenses that XL Specialty or XL Reinsurance may sustain and incur in connection with any Bonds or the XL GAI.

44.    The XL GAI is unequivocal and specific in setting forth the Indemnitors' obligations to make payment to XL Specialty and XL Reinsurance as soon as liability exists or is asserted against XL Specialty or XL Reinsurance, whether or not XL Specialty or XL Reinsurance has made payment therefor, equal to the sum of all pending claims asserted against XL Specialty and XL Reinsurance on any Bonds, plus the amount of costs and expenses which XL Specialty and XL Reinsurance, in their sole discretion, estimates may be incurred as a result of the assertion of such claims; or, the amount of the reserve set by XL Specialty or XL Reinsurance.

45.    The XL GAI is unequivocal and specific in setting forth the Indemnitors' obligation to promptly upon demand pay to XL Specialty and XL Reinsurance all losses and expenses incurred by them.

46.    The XL GAI is unequivocal and specific in setting forth the Indemnitors' obligations to provide XL Specialty and XL Reinsurance access to their books, records, and accounts.

### THE BONDED PROJECT

47.    On or about December 14, 2004, in reliance on the Zurich GAI, XL GAI, and the Indemnitors' promises contained therein, and at the request of one or more of the Indemnitors, the

Sureties issued payment and performance bonds naming LPCD as Principal and the Puerto Rico Aqueduct and Sewer Authority ("PRASA") as Obligee (collectively, the "Bonds"). True and correct copies of the Bonds are attached hereto as **Exhibit "C"** and incorporated herein by reference.

48.     The Bonds guaranteed LPCD's work pursuant to its contract with PRASA ("Contract") for the construction project known as Embalse del Rio Blanco Naguabo, Puerto Rico – As per Award Letter dated November 10, 2004 ("Project") and guaranteed LPCD's obligations for payment to:

> [A]ll persons, firms, and corporations who or which may furnish labor, or who furnish materials to perform as described under the [C]ontract and to their successors and assigns in the total aggregate penal sum of One Hundred Three Million Six Hundred Thirty-Two Thousand Two Hundred Seventy and 00/100 Dollars ($103,632,270.00) . . . .

### *THE SOLETANCHE LITIGATION AND JUDGMENT*

49.     On December 26, 2006, Soletanche, Inc. ("Soletanche"), one of LPCD's subcontractors on the Project, made a claim in the Court of First Instance in San Juan, Puerto Rico, against LPCD, the Sureties, PRASA, and others implicating the Bonds issued for the Project ("Soletanche Litigation").

50.     On or about May 6, 2019, the Court of First Instance entered judgment in the Soletanche Litigation, without limitation, against LPCD and the Sureties ("Trial Judgment").

51.     After entry of the Trial Judgment, multiple post-judgment motions and appeals were filed.

52.     On June 30, 2023, the Court of Appeals entered its judgment ("Appellate Judgment") on the multiple appeals from the Trial Judgment. A true and correct certified translation of the Appellate Judgment is attached hereto as **Exhibit "D"** and incorporated herein by reference.

53.     In the Appellate Judgment, the Court of Appeals found in favor of Soletanche and against LPCD and the Sureties, as follows:

> ***Soletanche will receive*** the following compensation ***from LPC&D and its sureties***: payment of the value of the columns within the work platform built and not paid, $770,241.08, change of criteria in the installation, maximum amperage $1,249,630.00 and for the stoppage for incorrectly rejecting the compacted sand in the stone columns $314,777.50 for ***a total of $2,334,648.58***. The ***CFI will determine the payment of interest*** in accordance with the subcontract signed by Soletanche and LPC&D.

54.     Following entry of the Appellate Judgment, various post-judgment motions were filed and on March 8, 2024, the Supreme Court of Puerto Rico entered final Resolution affirming the Appellate Judgment ("Final Resolution"). A true and correct certified translation of the Final Resolution is attached hereto as **Exhibit "E"** and incorporated herein by reference.

55.     In accordance with the Appellate Judgment, the Soletanche Litigation has been remanded to the Court of First Instance to determine the interest applicable and to adjudicate the final liability of LPCD and the Sureties.

### THE INDEMNITORS' DEFAULT

56.     On July 1, 2024, in light of the Sureties' exposure to loss and expense related to the Soletanche Litigation, the Sureties reminded the Indemnitors of their joint and several indemnity and collateral security obligations under the Zurich GAI and the XL GAI, and demanded that the Indemnitors honor those obligations and deposit collateral ("Collateral") with Zurich in the amount of $5,600,000 ("Surety Demand"). A true and correct copy of the Surety Demand is attached hereto as **Exhibit "F"** and incorporated herein by reference.

57.     In the Surety Demand, the Sureties further demanded that the Indemnitors honor their obligations to provide the Sureties with access to, or copies of, their books, records, and accounts ("Books and Records").

58.    On August 2, 2024, the Indemnitors sent a letter referencing the Surety Demand ("Indemnitor Response"). A true and correct copy of the Indemnitor Response is attached hereto as **Exhibit "G"** and incorporated herein by reference.

59.    The Indemnitor Response, however, fails to comply with the Indemnitors' obligations to the Sureties.

60.    To date, the Indemnitors have failed and refused to deposit the Collateral and to provide the Books and Records, both of which are breaches of the Zurich GAI and the XL GAI.

61.    The Sureties have demanded that the Indemnitors indemnify, exonerate, and collateralize the Sureties.

62.    The Sureties have incurred losses and expenses, including investigative costs and expenses and attorneys' fees as a result of the Soletanche Litigation and the Sureties continue to incur losses and expenses, and reasonably anticipate that they will incur and suffer additional losses and expenses in connection with having executed or procured the Bonds, in connection with the GAI, and in connection with the Soletanche Litigation and judgment.

63.    The Sureties reasonably fear and anticipate that they will incur additional losses and expenses in connection with the Bonds, the Zurich GAI and XL GAI, and the judgment entered in the Soletanche Litigation.

64.    The Indemnitors have failed and/or refused to indemnity, exonerate, and collateralize the Sureties as required by the Zurich GAI and the XL GAI.

65.    The Indemnitors' failure to honor and fulfill their obligations under the Zurich GAI and the XL GAI constitute defaults under or breaches of both the Zurich GAI and the XL GAI.

66.    Zurich and F&D have, in good faith, established a loss Reserve of $3,360,000.

67.    XL Specialty and XL Reinsurance, in good faith, estimate that their exposure for the pending judgment in the Soletanche Litigation plus costs and expenses is $2,240,000.

68.    Zurich's and F&D's loss Reserve and XL Specialty's and XL Reinsurance's equal the Collateral demanded in the Surety Demand, which is due to be deposited with the Sureties.

69.    The Sureties have retained their respective, undersigned counsel to represent them in this action, and are obligated to pay these attorneys a reasonable fee for their services rendered and for costs and expenses incurred. Pursuant to the Zurich GAI, the XL GAI, and applicable law, the Indemnitors are responsible for paying, among other things, these legal fees, plus court costs and interest.

70.    All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
## BREACH OF CONTRACT AGAINST THE INDEMNITORS

71.    The Sureties reallege and incorporate the allegations of Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.    The Indemnitors have committed various breaches of the Zurich GAI and XL GAI, and are in default under both by, among other things:

      a.    Failing to deposit the Collateral with the Sureties to protect them from the continuing and anticipated losses and expenses to the Sureties resulting from having issued the Bonds;

      b.    Failing to indemnify and keep indemnified the Sureties from the continuing and anticipated losses and expenses to the Sureties resulting from having issued the Bonds;

      c.    Failing to provide the Books and Records as required; and

d.      Failing to properly make payment to Soletanche for its work on the Project.

73.      As a result of the Indemnitors' breaches, the Sureties have suffered and will continue to suffer losses, costs, damages, attorneys' fees, disbursements, expenses, and investigative costs as a result of issuing the Bonds and in connection with the Zurich GAI and the XL GAI.

74.      The Indemnitors have ignored their contractual obligations and have failed and refused to honor their obligations as described above.

75.      Pursuant to the express terms of the Zurich GAI and XL GAI and applicable law, the Sureties are entitled to an award of their losses, costs, expenses, interest, and attorneys' fees that they incur in connection with the Bonds and the Zurich GAI and XL GAI including, without limitation, in bringing and pursuing this action to enforce the Indemnitors' obligations under the Zurich GAI and XL GAI, and for any liability existing against the Sureties by reason of having executed or procured the execution of the Bonds.

**WHEREFORE**, the Sureties demand judgment against the Indemnitors, jointly and severally, for all damages including, without limitation, direct and indirect, special, other damages, costs, pre- and post-judgment interest, attorneys' fees, expenses, losses, and such other and further relief as the Court deems just and proper.

## COUNT II
## SPECIFIC PERFORMANCE AGAINST THE INDEMNITORS

76.      The Sureties reallege and incorporate the allegations of Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

77.      The Sureties have demanded that the Indemnitors exonerate, indemnify, keep indemnified, and hold the Sureties harmless from any and all losses, costs, expenses, interest, and

attorneys' fees they incur by reason of having executed or having procured the execution of the Bonds.

78.    The Sureties have demanded that the Indemnitors post Collateral to be held as security against anticipated losses, costs, expenses, interest, and attorneys' fees.

79.    The Sureties have demanded that the Indemnitors provide reasonable access to their Books and Records.

80.    The Zurich GAI and the XL GAI require the Indemnitors to exonerate, indemnify, and hold the Sureties harmless from and against all losses and expenses including, without limitation, judgments, interest, court costs, and attorneys' fees incurred by reason of having executed or having procured the execution of the Bonds, by reason of the Indemnitors' failure to perform or comply with their joint and several obligations under the Zurich GAI and the XL GAI, and in enforcing any convents or conditions of the Zurich GAI or the XL GAI.

81.    The Zurich GAI and the XL GAI further require the Indemnitors to deposit Collateral with the Sureties as soon as liability exists or is asserted against the Sureties and in any event upon demand of the Sureties.

82.    The Sureties have suffered and continue to suffer various kinds and natures of liability, loss, and expense by virtue of and as a direct consequence of the Bonds and the Zurich GAI and the XL GAI.

83.    Despite the Sureties' demands that the Indemnitors fulfill their obligations under the Zurich GAI and the XL GAI, the Indemnitors have refused to honor or perform their specific obligations under the Zurich GAI and the XL GAI.

84.    The Sureties are entitled to an order compelling the Indemnitors, collectively and individually, jointly and severally, to specifically perform pursuant to the terms of the Zurich GAI

and the XL GAI by indemnifying, exonerating, and collateralizing the Sureties for all losses and expenses, plus attorneys' fees and other costs, that they have incurred, are incurring, and will continue to incur connection with the Bonds and the Zurich GAI and the XL GAI.

85.    The Sureties are entitled to an order compelling the Indemnitors to deposit Collateral in the amount of $5,600,000, as such amount may be adjusted in accordance with the Zurich GAI and the XL GAI.

86.    The Sureties are entitled to an order compelling the Indemnitors to provide access to all of their financial records including, without limitation, their books, records, and accounts.

87.    The Sureties are entitled to an order compelling the Indemnitors, individually and collectively, jointly and severally, to specifically perform pursuant to the terms of the Zurich GAI and the XL GAI by fully and completely discharging the Sureties from the Bonds and all liability thereunder.

88.    The Sureties have no adequate remedy at law to enforce their express, bargained for rights to be held harmless, collateralized or otherwise secured against any and all demands, claims, judgments, liabilities, losses, and expenses of whatsoever kind or nature, including but not limited to interest, court costs, and legal fees.

89.    The balance of equities plainly favors the unconditional rights of the Sureties under the Zurich GAI and the XL GAI and the Sureties' entitlement to enforce such unconditional rights and to require the Indemnitors to specifically perform their clear obligations thereunder.

90.    The Zurich GAI and the XL GAI are just, reasonable, and supported by adequate consideration.

91.    The terms of the Zurich GAI and the XL GAI are sufficiently definite to allow enforcement by this Court.

92.     The performance that the Sureties seek is substantially identical to that promised in the Zurich GAI and the XL GAI.

93.     There is no reason that the Court should not specifically enforce the Sureties' rights to Collateral from the Indemnitors.

94.     Accordingly, the Sureties are entitled to a decree of specific performance from this Court compelling the Indemnitors to perform their specific obligations under the Zurich GAI and the XL GAI including, without limitation, their obligations to procure the complete discharge of the Sureties under the Bonds and to deposit Collateral in the demanded amount of $5,600,000, as such amount may be adjusted in accordance with the Zurich GAI and the XL GAI.

**WHEREFORE**, the Sureties request that this Honorable Court enter a decree of specific performance compelling the Indemnitors, jointly and severally, to:

a.      Deposit with the Sureties the amount of $5,600,000, as such sum may be properly adjusted in accordance with the Zurich GAI and the XL GAI;

b.      Exonerate, indemnify, and keep indemnified the Sureties for all losses, expenses, costs, attorneys' fees, and interest that the Sureties sustain or incur by reason of having executed or procured the execution of the Bonds and/or the Zurich GAI and the XL GAI;

c.      Exonerate, indemnify, and keep indemnified the Sureties for all liability existing or asserted against them, whether or not they have made any payments therefor;

d.      Preventing the Indemnitors from selling, transferring, encumbering, diverting, disbursing, or disposing of any assets and personal or real property unless and until the Sureties receive the Collateral;

e.      Requiring the Indemnitors to provide the Sureties with a full and complete accounting of all assets owned by them or in which they have an interest and to provide the Sureties access to all of their financial records, including their books, records, and accounts;

f.      Granting a lien upon all assets and property, including realty, personalty, and mixed, in which the Indemnitors have any interest. The Sureties further request that such lien(s) shall secure them against any loss they may sustain or incur by virtue of having executed the Bonds. The Sureties further request that such lien(s) remain in effect unless and until the Indemnitors have fully paid the Sureties;

g.      Honor all other agreements and obligations contained in the Zurich GAI and the XL GAI, including payment of the Sureties' respective attorneys' fees and cost incurred in pursuing this claim; and

h.      Comply with such other and further relief as the Court deems just and proper.

## COUNT III
## CIVIL CODE INDEMNITY AGAINST THE INDEMNITORS

95.     The Sureties reallege and incorporate the allegations of Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

96.     The Sureties have suffered damages, losses, expenses, attorneys' fees, disbursements, expenses, and investigative costs as a result of issuing the Bonds and in connection with the Zurich GAI and the XL GAI.

97.     The Sureties' liabilities under the Bonds are the sole result of the Indemnitors' failure to honor and fulfill their obligations.

98.    The Indemnitors have ignored, failed, or are simply unable to honor their indemnification obligations to the Sureties pursuant to applicable statutory provisions including, without limitation, 31 L.P.R.A. § 4911; 31 L.P.R.A. § 4916; and 31 L.P.R.A. § 3023.

99.    As a natural, direct, proximate, and/or foreseeable result of the Indemnitors' failure to honor their legal indemnification obligations, the Sureties have incurred damages.

100.    The Sureties are entitled to an award of their attorneys' fees, costs, and expenses they incur in connection with the Zurich GAI and the XL GAI, including in bringing and pursuing this action to enforce the Zurich GAI and the XL GAI.

**WHEREFORE**, the Sureties demand judgment against the Indemnitors for all damages including, without limitation, direct and indirect, special, other damages, costs, pre- and post-judgment interest, attorneys' fees, expenses, losses, and such other and further relief as the Court deems just and proper.

## COUNT IV
## COMMON LAW INDEMNITY AGAINST LPCD

101.    The Sureties reallege and incorporate the allegations of Paragraphs 1 through 4, 6, 15 through 18, and 47 through 70 of this Complaint as if fully set forth herein.

102.    The Sureties have suffered losses, costs, damages, attorneys' fees, disbursements, expenses, and investigative costs by reason of having executed or having procured the execution of the Bonds. The Sureties' liabilities under the Bonds are the result of LPCD's failure to honor and fulfill its obligations.

103.    The Sureties are without fault for the claims, demands, lawsuits, judgments, and potential claims made against the Bonds.

104.    Any liability of the Sureties under the Bonds is merely secondary, technical, derivative, and/or vicarious to that of LPCD, and thus the Sureties are entitled to indemnification by law.

105.    The Sureties had a "special relationship" with LPCD by virtue of issuing the Bonds, which makes the Sureties' liabilities under the Bonds merely technical, secondary, and vicarious to that of LPCD, which was actively and completely at fault for, and obligated to pay, all underlying liability on the Bonds.

106.    As a direct and proximate result of LPCD's failure to honor its obligations, the Sureties have incurred and continue to incur damages, losses, and expenses by reason of having executed the Bonds, which include but are not limited to, all sums that the Sureties have paid arising from having furnished the Bonds, including attorneys' fees, investigative costs, consulting fees, prejudgment interest, and other costs and expenses that the Sureties have incurred or incur as a result of issuing the Bonds.

107.    As a result of issuing the Bonds, the Sureties have incurred damages including, without limitation, attorneys' fees, costs, and expenses, which are continuing in nature.

108.    The Sureties are entitled to receive their reasonably incurred attorneys' fees.

**WHEREFORE**, the Sureties demand judgment against LPCD for all damages including, without limitation, direct and indirect, special, other damages, costs, pre- and post-judgment interest, attorneys' fees, expenses, losses, and such other and further relief as the Court deems just and proper.

## COUNT V
## EXONERATION AGAINST THE INDEMNITORS

109.    The Sureties reallege and incorporate the allegations of Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

110.    This is an action for exoneration seeking equitable relief.

111.    LPCD has been unable and/or unwilling to satisfy its obligations on the Project.

112.    To the extent that the Sureties are liable under the Bonds, the Sureties are not attempting to avoid their secondary liability to, without limitation, the Obligee(s), Soletanche, or other the claimants for the alleged failure of LPCD to render payment to certain claimants who provided labor, materials, services or equipment to LPCD for the Project or for any failure of LPCD to perform the Project work in a proper or complete manner.

113.    Instead, the Sureties demand that the Indemnitors be compelled to fulfill their obligations to the Sureties by satisfying the claims, defending, and indemnifying the Sureties in all actions against the Sureties and/or the Bonds, and deposit Collateral with the Sureties in the amount of $5,600,000, as such amount may be adjusted in accordance with the Zurich GAI and the XL GAI, and to satisfy all liability or loss for which the Indemnitors are obligated to indemnify the Sureties under the Zurich GAI and the XL GAI and applicable law.

114.    Pursuant to the express terms of the Zurich GAI and the XL GAI, the Indemnitors are required to exonerate the Sureties for all amounts that the Sureties have sustained or incurred as a result of issuing the Bonds.

115.    The Sureties are entitled to an award of attorneys' fees, costs, and expenses that they incur in connection with the Zurich GAI and the XL GAI, including in bringing and pursuing this action to enforce the Zurich GAI and the XL GAI.

**WHEREFORE**, the Sureties respectfully request that this Honorable Court enter a Final Judgment in their favor and against the Indemnitors, requiring the Indemnitors to perform under the Zurich GAI and the XL GAI as follows:

a.    Pay and reimburse the Sureties the sums that they have incurred, including all loss and expense incurred to date by reason of having furnished and executed the Bonds;

b.    Provide Collateral to the Sureties in the amount of $5,600,000, as such amount may be adjusted in accordance with the Zurich GAI and the XL GAI to exonerate the Sureties for their actually and potentially incurred liabilities, losses, costs, and expenses;

c.    Exonerate the Sureties by discharging all debts that, if unpaid, would become the Sureties' obligations;

d.    Pay and reimburse the Sureties for their reasonable attorneys' fees and costs incurred in prosecution of the instant action; and

e.    Awarding the Sureties such other and further relief as this Court deems just and proper.

## COUNT VI
## QUIA TIMET AGAINST THE INDEMNITORS

116.    The Sureties reallege and incorporate the allegations of Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

117.    LPCD is unable and/or unwilling to satisfy its obligations on the Project to which the Bonds relate.

118.    As a result of issuing the Bonds, the Sureties have already been called upon and may be called upon in the future under the Bonds to perform the obligations of LPCD.

119.    Indemnitors are obligated to exonerate, indemnify, and keep indemnified the Sureties for any such alleged liability or loss or expense.

120.    The Sureties are entitled to be fully collateralized by the Indemnitors before making any payments in discharge of any alleged bond obligations.

121.    The Indemnitors have failed and/or refused and continue to refuse to perform their obligations, and the Sureties fear that they will suffer further damages due to LPCD's default on the Project; Indemnitors' failure to satisfy the claims and threatened claims; and their failure to honor their obligations to the Sureties.

122.    The Indemnitors have been unwilling to meet their obligations under the Zurich GAI and the XL GAI.

123.    Particularly, the Indemnitors refuse to collateralize, exonerate, indemnify, and keep indemnified the Sureties for liability which exists, has been asserted, or is anticipated against the Sureties.

124.    Unless the requested relief is granted, the Sureties will not be adequately secured and/or collateralized for actual or potential obligations under the Bonds prior to making any necessary and appropriate payments. In addition, the Sureties will be forced to incur attorneys' fees, costs, expenses, disbursements, and potentially consulting fees and costs to investigate, defend against, and/or resolve the claims, all of which constitute losses, costs, damages, and expenses for which the Indemnitors are obligated to fully collateralize the Sureties.

125.    The Indemnitors, collectively and individually, are obligated under the doctrine of *quia timet* to post collateral security to the Sureties for all losses and expenses to be incurred as consequence of the Bonds.

126.    Claims including, without limitation, the Soletanche Litigation have been made against the Bonds and the Sureties have already been compelled to expend funds in connection with these claims.

127.    Further, if the Court does not immediately grant the requested relief, the Indemnitors may attempt to avoid their obligations to indemnify and keep indemnified the Sureties under the terms of the Zurich GAI and the XL GAI by selling, transferring, disposing, liening, securing, conveying, and/or otherwise diverting assets to satisfy obligations other than those covered by the Bond or otherwise included within the scope of the Zurich GAI and the XL GAI, or liquidating their assets and avoiding jurisdiction of this Court, thereby preventing the Sureties' access to these assets for discharging the obligations of the Indemnitors to exonerate and indemnify the Sureties. Such actions will irreparably harm the Sureties.

128.    The Sureties have no plain, speedy, or adequate remedy at law and will be irreparably and permanently injured if this Court does not grant the requested relief. If the Indemnitors are not immediately enjoined from transferring their assets, the assets will be disposed of permanently and the Indemnitors will render themselves insolvent, all to the irreparable prejudice of the Sureties.

129.    As a proximate result of the conduct of the Indemnitors, the Sureties have been or will be damaged so long as the Indemnitors are able to circumvent their obligations to the Sureties under the Zurich GAI and the XL GAI by transferring their assets. The full amount of this damage is not now known to the Sureties, and the Sureties will amend this complaint to state this amount when the same becomes known to it, or on proof of the damages.

130.    The Sureties are entitled to receive a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining the Indemnitors, and each of them, as well as their agents, servants, employees, and all persons and entities acting under, in concert with, or for them, from further transferring assets absent further court order.

131.    The Sureties are entitled to compel the Indemnitors to post collateral in the amount of $5,600,000, as such amount may be adjusted in accordance with the Zurich GAI and the XL GAI, against any anticipated loss or expense.

132.    The Sureties are entitled to an award of their attorneys' fees and costs in pursuing this claim and enforcing the Zurich GAI and the XL GAI according to the terms of the Zurich GAI and the XL GAI.

**WHEREFORE**, the Sureties request that this Court enter an Order:

a.    Preventing the Indemnitors from diverting or disbursing any funds relating to any Bonds or Projects without the Sureties' express and written approval;

b.    Appointing a receiver and establish a joint control account so the Indemnitors may not divert or disburse any funds without the Sureties' express and written authorization;

c.    Compelling the Indemnitors to deposit collateral in the amount of $5,600,000, as such amount may be adjusted in accordance with the Zurich GAI and the XL GAI, to secure the Sureties against any actual, alleged, anticipated, and/or potential liabilities, costs, damages, losses, or expenses, as set forth in the Zurich GAI and the XL GAI;

d.    Attaching or freezing the Indemnitors' assets until the Collateral is posted to adequately protect the Sureties under the terms of the Zurich GAI and the XL GAI;

e.    Requiring the Indemnitors to provide the Sureties with a full and complete accounting of all assets owned by them or in which they, jointly or severally,

have any interest, and to provide the Sureties with access to all of their financial records, including their books, records, and accounts;

f.      Permanently enjoining and restraining the Indemnitors from selling, transferring, disposing of, or liening any asset or property, and further enjoining and restraining the Indemnitors from allowing any asset or property to be liened, unless and until the Sureties shall be placed in funds;

g.      Granting a lien upon all assets and property, including realty, personalty and mixed, in which the Indemnitors have any interest. The Sureties further request that such lien(s) shall secure the Sureties against any loss they may sustain or incur by virtue of them having executed the Bonds. The Sureties further request that such lien(s) remain in effect unless and until the Sureties are placed in funds as requested hereinabove;

h.      Requiring the Indemnitors, jointly and severally, to pay all attorney's fees, costs, and expenses which the Sureties have incurred; and

i.      Granting such further relief as this Court deems just and proper.

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, on November 19, 2024.

**DELGADO & FERNÁNDEZ, LLC**
T Mobile Center at San Patricio
B7 Tabonuco St., Suite 1000
Guaynabo, PR 00968
Tel.  (787) 274-1414
Fax: (787) 764-8241

/s/*Alfredo Fernández-Martínez*
**Alfredo Fernández-Martínez**
USDC-PR #210511
afernandez@delgadofernandez.com

/s/*Daniel Limés-Rodríguez*
**Daniel Limés-Rodríguez**
USDC-PR #307505
dlimes@delgadofernandez.com

*Counsel for Zurich American Insurance Company, Fidelity and Deposit Company of Maryland, XL Specialty Insurance Company and XL Reinsurance America, Inc.*

**GURLEY FANT, P.A.**

/s/ *David E. Gurley*
USDC-PR #221202
1800 2nd Street, Suite 714
Sarasota, Florida 34236
dgurley@gflaw.com
(941) 365-4501

*Counsel for Zurich American Insurance Company and Fidelity and Deposit Company of Maryland*

**TRIF & MODUGNO LLC**

/s/ *Scott M. Palatucci*[1]
11 Broadway, Suite 615
New York, New York 10004
spalatucci@tm-firm.com
Tel. (973) 547-3611
Fax: (973) 554-1220

*Counsel for XL Specialty Insurance and XL Reinsurance America, Inc.*

---

[1] Application for Admission Pro Hac Vice pending.