**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, ET AL. <br><br> **Plaintiffs** <br><br><br> v. <br><br><br> L.P.C.&D., INC. ET AL. <br><br> **Defendants** | **CIVIL NO.** 24-1538 (RAM) |

<u>**OPINION AND ORDER**</u>

This matter comes before the Court on Magistrate Judge Marcos E. Lopez's December 12, 2025 Report and Recommendation ("R & R"), (Docket No. 63), and parties' objections thereto (Docket Nos. 70, 71, 72). After presiding over an evidentiary hearing, the Magistrate Judge issued an R & R recommending that Plaintiffs Zurich American Insurance Company ("Zurich"), Fidelity and Deposit Company of Maryland ("F&D"), XL Specialty Insurance Company ("XLS"), and XL Reinsurance America, Inc. ("XLR") (collectively, "Plaintiffs" or "Sureties")'s *Motion to Compel* at Docket No. 2 be denied, on the grounds that the Sureties fail to demonstrate the irreparable harm necessary for preliminary injunctive relief. <u>Id.</u> at 38.

In addition, the Magistrate Judge recommends that Defendants L.P.C.&D., Inc. ("LPCD"), Las Piedras Construction Corp. ("Las Piedras"), Tejo, Inc. ("Tejo"), Equipment Depot, Inc. ("EDI"),

Kane Caribbean, Inc. ("KCI"), Piezas Extra, Inc. ("PEI"), Equipos de Boquerón, Inc. ("EBI"), Caribbean Raceway Park, Inc. ("CRP"), Hacienda Cuco, Inc. ("HCI"), and Pedro Feliciano Benítez ("Benítez") (collectively, "Defendants" or "Indemnitors")'s *Motion to Dismiss* at Docket No. 48 be denied, on the grounds that the Sureties' claims are ripe. Id. Lastly, the Magistrate Judge recommends that the Indemnitors' requests at Docket Nos. 25 and 26 for the Court to abstain under Colorado River be denied, because the related proceedings in the Puerto Rico Court of First Instance are not parallel to those in this Court. Id. The Sureties and the Indemnitors each filed timely objections to the R & R. (Docket Nos. 70 and 71). The Sureties also filed a *Response in Opposition* to the Indemnitors' objection. (Docket No. 72).

Having reviewed the record *de novo*, the Court **ADOPTS IN PART** and **REJECTS IN PART** the R & R.

## I.    STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 72, a district court may refer a pending motion to a magistrate judge for a report and recommendation regarding the same. *See also* L. Civ. R. 72(b). Once the magistrate judge has issued their report, the parties are permitted to file written objections within fourteen (14) days of being served a copy of the report. *See* Fed. R. Civ. P. 72(a). A party that timely objects to a report and recommendation is granted a "*de novo* determination of those portions of the report or

specified proposed findings or recommendations to which specific objection is made." United States v. Villa-Guillen, 2019 WL 3290774, at *1 (D.P.R. 2019) (quotation omitted). A district court may choose "to accept, reject, or modify, in whole or in part, the findings made" by the magistrate judge. 28 U.S.C. § 636(a)(b)(1).

The First Circuit stated in Santos-Santos v. Torres-Centeno that when no objection to a report and recommendation has been presented, a district court may assume that "[the affected party] agree[s] with the magistrate judge's recommendation." 842 F.3d 163, 166 (1st Cir. 2016) (quoting Santos-Santos v. P. R. Police Dep't., 63 F.Supp.3d 181, 184 (D.P.R. 2014)). Thus, the district court only needs to determine "that there is no 'plain error' on the face of the record" for unopposed portions of a report and recommendation. Vazquez-Garcia v. Hacienda Madrigal, Inc., 2019 WL 4739324, at *1 (D.P.R. 2019) (citing López-Mulero v. VelezColon, 490 F.Supp.2d 214, 218 (D.P.R. 2007)).

## II.   ANALYSIS

### A. The Court's adoption of portions of the R & R
####    a. Procedural background and factual findings

While the Sureties and the Indemnitors each filed timely objections to the R & R, (Docket Nos. 70 and 71), and while the Sureties also filed a *Response* to the Indemnitors' objection, (Docket No. 72), neither object to the Magistrate Judge's account of the Procedural Background or Findings of Fact. (Docket No. 63 at 1-7). The latter are drawn in part from the parties' own joint

*Motion Submitting Uncontested Material Facts*. (Docket Nos. 49, 63 at 3 n.1). The Sureties briefly argue that the Magistrate does not give sufficient weight to stipulated facts regarding the dissolution of some Indemnitors; but they do not object to the substance of the Magistrate's factual findings. (Docket No. 70 at 22-23).

As a result, the Court reviews the R & R's unobjected-to Procedural Background and Findings of Fact sections for plain error, and finds none. "Where, as here, a [Magistrate Judge] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquent simply to hear its own words resonate." Bing Feng Chen v. I.N.S., 87 F.3d 5, 7 (1st Cir. 1996) (quotation omitted). The Court hereby **ACCEPTS, ADOPTS,** and **INCORPORATES** by reference the Magistrate Judge's unchallenged procedural background and findings of fact sections *in toto*.

### b. Ripeness

For the Magistrate, both the jurisdictional and prudential aspects of the ripeness analysis indicate that this case is a live controversy for the following reasons: liability has already been adjudicated in the ongoing Commonwealth court litigation; the contractual trigger for the Indemnitors to pay the Sureties is "as soon as liability exists or is asserted" as opposed to a final judgment; waiting for a more final number would not materially alter the legal issue presented; and the imminent threat of the

execution of judgment in the Commonwealth court exposes the Sureties to hardship. (Docket No. 63 at 11-12). As a result, the R & R concludes that the case is ripe for adjudication and recommends that the Indemnitors' *Motion to Dismiss* be denied. <u>Id.</u> at 13. In reply, the Indemnitors argue that the Sureties' claims remain premature in federal court because the underlying Commonwealth proceedings have yet to fully compute the total amount owed--comprehensive of attorneys' fees, interest, and yet-uncalculated penalties. (Docket No. 71 at 3-6).

Upon *de novo* review, the Court agrees with the Magistrate. (Docket No. 48). The Court finds that liability has already been adjudicated in Commonwealth proceedings. (Docket No. 63-12). Moreover, the contractual promises between the Sureties and the Indemnitors obligate the latter to pay the former "as soon as liability exists or is asserted"--not after a fully quantified judgment. (Docket No. 2-1 at 1). Lastly, the possibility of later amendments to the amount owed by the Indemnitors does not render the present action unripe, as this case centers around whether the Indemnitors' alleged contractual breaches give rise to enforceable relief for the Sureties. Such obligations will continue to exist even if the amount owed later increases. Hence, the Court hereby **ACCEPTS, ADOPTS,** and **INCORPORATES** by reference the Magistrate Judge's ruling on Indemnitors' *Motion to Dismiss*. (Docket No. 63 at 8-13). Indemnitors' *Motion to Dismiss* is **DENIED.**

Civil No. 24-1538(RAM)                                                6

### c. **Colorado River** abstention

The Magistrate Judge recommends that the Court not abstain under Colorado River because the precedent Puerto Rico court case is not "parallel" to this one and does not deal with "substantially identical claims." Id. at 13-16. He reasons that the Commonwealth litigation centers around the Sureties and Indemnitors' failure to pay Soletanche, Inc. ("Soletanche"), a subcontractor of LPCD—a legal and factual issue distinct from the Indemnitors' failure to pay the Sureties. Id. Moreover, the Magistrate points to the fact that the antecedent Commonwealth lawsuit implicates parties absent in this case, as the instant litigation does not involve Soletanche or the Puerto Rico Aqueduct and Sewer Authority ("PRASA"). Id. Hence, he concludes that the Indemnitors have not made the threshold showing of parallelism and thus Colorado River does not apply. Id. In reply, the Indemnitors largely reiterate their earlier arguments that the claims here are "*nearly* identical" to the Puerto Rico court litigation. (Docket No. 71 at 7). As the Sureties point out, these arguments are little more than a "rehash" of the Indemnitors' previous assertions. (Docket No. 72 at 1).

Upon *de novo* review, the Court concurs with the Magistrate's rejection of Colorado River abstention. "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction'...[because

of] the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976) (internal citations omitted). <u>Colorado River</u> recognizes that only exceptional circumstances warrant the exercise of abstention. <u>Id.</u> at 818.

No such circumstances are present here. While the two proceedings may share a roughly common factual universe, they do not encompass substantially identical parties or issues. Rather, as the Magistrate aptly notes, the case at bar concerns distinct contractual obligations owed by the Indemnitors to the Sureties— namely, duties arising under indemnity agreements to deposit collateral upon demand, provide access to books and records, and indemnify the Sureties. (Docket No. 63 at 15-16). These obligations are not coextensive with the merits of the Commonwealth litigation involving Soletanche. On the contrary, the question before this Court is altogether different: whether the Indemnitors breached their separate contractual promises to the Sureties and whether the Sureties are able to enforce those promises in this forum now. The presence in the Puerto Rico court litigation of subcontractors not involved in the agreements between the Indemnitors and the Sureties further underscores the lack of parallelism here. *See* <u>id.</u> at 15. Thus, the Court hereby **ACCEPTS, ADOPTS,** and **INCORPORATES** by

reference the Magistrate Judge's recommendation to not invoke <u>Colorado River</u> abstention (Docket No. 63 at 13-16).

**B. The Court's rejection of portions of the R & R**

However, the Court diverges from the Magistrate on the questions of law as to the irreparable harm caused by: (a) the Indemnitors' failure to deposit collateral with the Sureties, and (b) the Indemnitors' continued refusal to provide the Sureties reasonable access to books, records, and accounts. (Docket No. 63 at 19-29, 34-36).

A party seeking a preliminary injunction must make a clear showing that: (1) they have a substantial likelihood of success on the merits; (2) they face a significant potential for irreparable harm if their request is denied; (3) the issuance of an injunction will not impose more of a burden on the nonmovant than its absence will impose on the movant; and (4) the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest. <u>McGuire v. Reilly</u>, 260 F.3d 36, 42 (1st Cir. 2001); see also <u>Charlesbank Equity Fund II v. Blinds To Go, Inc.</u>, 370 F.3d 151, 162 (1st Cir. 2004).

This Court agrees with the Magistrate's unopposed restatement of the applicable legal standard for preliminary injunctions. (Docket No. 63 at 16-18). Moreover, except for the Sureties' complaint that the R & R "misbalances" the preliminary injunction factors by not considering First Circuit "sliding scale"

principles, (Docket No. 70 at 23-24), neither the Sureties nor the Indemnitors meaningfully object to the Magistrate's analysis of the likelihood of success on the merits and the public interest. (Docket No. 63 at 18-19, 30-33, 37). Because the R & R's recommendations as to those two factors for the Indemnitors' (a) failure to deposit collateral, and (b) refusal to provide access to books and records are unobjected-to and the Court finds no clear error, it hereby **ACCEPTS, ADOPTS,** and **INCORPORATES** them. After ruling on the irreparable harm and the balance of the equities factors *de novo* below, the Court conducts its own balancing test for the Indemnitors' (a) failure to deposit collateral, and (b) refusal to provide access to books and records.

1. **The Indemnitors' failure to deposit collateral with the Sureties**

Neither the Supreme Court nor the First Circuit have squarely decided whether an indemnitor's failure to furnish collateral irreparably harms a surety. This question is particularly prominent when indemnitors and sureties have previously stipulated that failure to collateralize will constitute irreparable harm to the surety and deprive it of an adequate remedy at law. As detailed below, district courts across the country have arrived at divergent answers, but the case law has trended in favor of finding irreparable harm.

The Magistrate believes that, irrespective of contractual terms, the harm suffered by the Sureties because of non-

collateralization remains fundamentally monetary because it arises from the risk that the Sureties will be required "to tap into their own coffers to pay." (Docket No. 63 at 12-13). He reasons that the presence of the contractual irreparable harm clause does not relieve the Sureties of the obligation to demonstrate irreparable harm for preliminary injunctive relief and concludes that they fail to allege more than economic harm. Id. at 26-29. Accordingly, he recommends that the request for collateralization be denied for lack of irreparable harm. Id.

The Sureties object that the Magistrate Judge's recommendation is contrary to the weight of the persuasive authorities from across the country, which often counsel in favor of enforcing collateral-security provisions in surety indemnity agreements. (Docket No. 70 at 16-23). The Sureties argue that they suffer many harms in addition to economic damages when denied immediate access to collateral, including the loss of what they specifically bargained for, exposure to increased risk, and involuntary reduction to general unsecured creditor status. Id. at 14-19.

This Court agrees with the Sureties. The Sureties' injury is not limited to future dollars paid--rather, it includes both the infliction of an unbargained-for risk of loss as well as the annulment of the contractual right to immediate collateral that the Sureties **did** acquire. The Court's view accords with the law of

suretyship and the advice of the Restatement (Third) of Suretyship and Guaranty. RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 21.

The Restatement recognizes that when a surety is forced to effectively become the principal on account of the principal's failure to uphold its end of the bargain, "it is inequitable for the [surety] to be compelled to suffer the inconvenience and temporary loss that performance of the secondary obligation will entail. Thus, if the [principal] has no defense to its duty of performance, the [surety] is entitled to appropriate relief protecting its interests. The right to such relief is sometimes called the right of exoneration." Id. at cmt. i. Hence, under the Restatement's logic, the Court must prevent the Sureties from suffering even the temporary exposure to risk that comes from not having collateral.

When the principal so fails to perform, the Restatement frames judicial intervention not as "anticipatory relief for a future breach of the duty to perform or the duty to reimburse," but rather as "a present remedy for the current breach of the duty to refrain from conduct impairing the [surety]'s expectation." Id. at cmt. j. In the same vein, the Sureties in the instant case are **currently** being harmed by the Indemnitors' failure to satisfy the Sureties' expectation that they would collateralize.

Lastly, the Restatement recommends the same forms of relief as requested by the Sureties, namely that the court "direct

performance by the [principal]" or "require that the principal obligor give the [surety] adequate security for its ultimate reimbursement." Id. at cmt. k. Hence, the Restatement suggests that the Indemnitors in the case at bar should be required to provide the Sureties with security in the form of collateral. See id.

   As the Magistrate Judge notes, the district court case law concerning irreparable harm to sureties deprived of collateral is split.[1] (Docket No. 63 at 22) ("There is a lack of consensus as to whether, in the context of sureties, clauses in indemnity agreements with 'irreparable harm' language—like the language in the XL GAI—are enough on their own to meet the irreparable harm prong of the preliminary injunction standard, and neither the United States Court of Appeals for the First Circuit nor the United States Supreme Court have yet ruled on this particular issue"). However, the dominant trend in the case law favors the path this Court has charted. See, e.g., Safeco Ins. Co. of Am. v. Schwab,

---

[1] The Sureties themselves direct the Court's attention to one unpublished case from the District of Puerto Rico from 2007, in which the court briefly analyzed a surety's equitable theory for quia timet relief and concluded within the space of a few sentences that there was only monetary harm and, therefore, no irreparable harm. United States Fid. & Guar. Co. v. Diaz-Matos, 2007 WL 878571, *20 (D.P.R. 2007). It is inapposite. That case dealt with a sweeping quia timet request, far broader than the relief sought here, and its cursory irreparable harm discussion provides no evidence for its assertion that the surety's injury was solely economic. To the extent Diaz-Matos can be read as requiring a showing of insolvency or the secretion of assets before a court may order injunctive relief, this Court simply disagrees. Nevertheless, even the Diaz-Matos court ordered the indemnitor to post collateral security at the summary judgment stage on account of the unambiguous collateral security provisions in the relevant indemnity agreement. Id. at *21-*22.

739 F.2d 431, 433 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses"); Merchs. Bonding Co. (Mut.) v. Ark. Constr. Sols., LLC, 2019 WL 452767, *4 (W.D. Ark. 2019) ("In the Court's view, there are more district courts that come down squarely on the side of granting preliminary injunctive relief in indemnity agreement cases").

District courts surveying the case law from across the country have observed that an "an overwhelming majority of district courts" have sided with sureties in ordering indemnitors to furnish collateral. Argonaut Ins. Co. v. Summit Concrete, Inc., 647 F. Supp. 3d 1228, 1233 (N.D. Ala. 2022) (collateralization "is necessary to protect...the bargained-for benefit of collateral security, avoidance of present exposure to liability during pending litigation against indemnitors, and avoidance of risk that...the surety will be left as a general unsecured creditor"). Other courts' review of the precedent has remarked that "case law nationwide has recognized the right of a surety to use the equitable remedy of specific enforcement to secure collateralization." Auto-Owners Ins. Co. v. Randy B. Terry, Inc., 2013 WL 6583959, at *6 (N.D. Ala. 2013). Similarly, other districts have noted that courts "routinely" find that "sureties suffer immediate, irreparable harm if they are denied receipt of collateral," and "generally" grant "specific performance to enforce collateral security clauses based on the premise [that]

such remedy is required to protect the surety's bargain." <u>Great Am. Ins. Co. v. SRS, Inc.</u>, 2011 WL 6754072, at *8 (M.D. Tenn. 2011); <u>Liberty Mut. Ins. Co. v. Nat'l Pers. of Texas, Inc.</u>, 2004 WL 583531, at *2 (N.D. Tex. 2004).

The sophisticated parties on the two sides of the case at hand entered into indemnity agreements under which the Indemnitors agreed to deposit collateral with the Sureties "as soon as liability exists or is asserted." (Docket No. 2-1 at 1). "It is no appropriate part of judicial business to rewrite contracts freely entered into between sophisticated business entities." <u>RCI Ne. Servs. Div. v. Bos. Edison Co.</u>, 822 F.2d 199, 205 (1st Cir. 1987). As in the cases outlined above, this Court is of the view that the overarching purpose of these indemnity agreements' collateral security clauses was to protect the Sureties from even temporary risk of loss, and that "no amount of *future* damages [would] provide[] an adequate remedy to harm resulting from *present* exposure." <u>Int'l Fid. Ins. Co. v. Talbot Constr., Inc.</u>, 2016 WL 8814367, at *7 (N.D. Ga. 2016); *see also* <u>Ohio Cas. Ins. Co. v. Fratarcangelo</u>, 7 F. Supp. 3d 206, 214 (D. Conn. 2014) ("the surety has specifically bargained for prejudgment collateralization and a judgment for money damages alone would deprive the surety of prejudgment relief to which it is contractually entitled") (internal citations and quotations omitted); <u>Hanover Ins. Group v. Singles Roofing Co., Inc.</u>, 2012 WL

2368328, at *38-39 (N.D. Ill. 2012) ("prevailing case law in Illinois [holds] that contracts that specifically require the posting of collateral upon assertion of a claim are designed to prevent the squirreling of assets by a defendant in order to avoid ultimate performance on the terms of the contract"). Hence, in addition to suffering the obvious prospect of possible economic harm in the future, the Sureties are **presently** harmed by the loss of the collateral right for which they entered into an indemnity agreement. This frustrates the suretyship entirely, as it forces the Sureties into the posture of general unsecured creditors. No belated money judgment can bandage this harm.

Accordingly, this Court declines to view the loss suffered by the Sureties as "merely" economic or redressable by money damages. Consistent with the Restatement (Third) of Suretyship and Guaranty and the great majority of the case law from across the nation, this Court concludes that the Sureties have shown irreparable harm and so respectfully rejects the Magistrate's recommendation.

With this finding of irreparable harm in hand, the preliminary injunction balancing test weighs heavily in favor of granting relief. *See* McGuire, 260 F.3d at 42 (requiring consideration of likelihood of success on the merits, irreparable harm, burdens on the movants and nonmovants, and the public interest). As the Magistrate correctly notes, the Sureties have shown a strong

likelihood of success on the merits on account of the unambiguous collateral provisions in the indemnity agreements. (Docket No. 63 at 18-19). Once it is resolved that Plaintiffs suffer present harm in addition to monetary damages, the Magistrate Judge's analysis of the balance of the equities also tips in the Sureties' favor. Id. at 29-30. So too does the public interest factor, since the enforcement of indemnity agreements is in the interest of the public. Id. at 30-31. Accordingly, with the likelihood of success, irreparable harm, balance of equities, and public interest factors all in the Sureties' favor, the Court concludes that preliminary injunctive relief is appropriate.

The total amount of the currently resolved penalty in the Commonwealth courts is $2,676,471.31. (Docket No. 63-12 at 2). In their *Motion to Compel*, the Sureties request a court order "compelling the Indemnitors, jointly and severally, to deposit $5,600,000.00 in cash with Zurich, on behalf of the Sureties, as security against anticipated losses to be incurred by the Sureties." (Docket No. 2 at 24). The Sureties justify this discrepancy based on loss reserves they have each calculated "in good faith" to represent their exposure, but do not otherwise substantiate why the Court should grant them an extra $2,923,528.69 in collateral. (Docket No. 2 at 10). No exhibits are referenced to back up these reserve calculations or indicate how they were computed. Id. While it is true that both sides anticipate

forthcoming additions of attorneys' fees, interest, and yet-uncalculated penalties to the amount computed by the Puerto Rico courts, the Sureties do not show that these figures add up to nearly $3 million. *See* (Docket No. 71 at 3-6). Courts faced with similar circumstances elsewhere have issued preliminary injunctions ordering indemnitors to deposit collateral equal to the calculated liability while simultaneously clarifying that the sureties "will be entitled to an additional payment of [their] reasonable fees, costs, and expenses incurred in litig[ation]." *See, e.g.*, Merchs. Bonding Co., 2019 WL 452767 at *4. Accordingly, this Court orders the Indemnitors to post collateral with Zurich in the amount of $2,676,471.31. As proceedings are still at the stage of preliminary relief, the Sureties have ample opportunity to petition for an adjustment to the court-ordered collateral.

### 2. The Indemnitors' failure to provide the Sureties with reasonable access to their books, records, and accounts.

The Magistrate offers four brief justifications for reasoning that the Sureties have not demonstrated irreparable harm stemming from the Indemnitors' failure to provide them access to their books, records, and accounts. (Docket No. 63 at 35-36). They are as follows: (1) the contractual irreparable harm clause does not cover access to books, records, and accounts; (2) in the same way that the Sureties only suffer economic harm when deprived of collateral, the Sureties' inability to access the Indemnitors'

books only exposes them to money damages; (3) access to the Indemnitors' books can be acquired through discovery; and (4) while some of the Indemnitors have been dissolved, the Sureties have not presented evidence that others are financially unstable. Id. at 35-36. The Sureties admit the first point but argue that the lack of a contractual irreparable harm clause is not dispositive when the Court is independently evaluating a petition for preliminary injunction. (Docket No. 70 at 19-20). They then gesture toward extensive district court case law indicating that sureties are irreparably harmed absent immediate access to their indemnitors' books and insist that such irreparable harm may occur before discovery. Id. at 20-22. The Sureties assert that the Magistrate Judge does not give sufficient weight to stipulated facts regarding the dissolution of some Indemnitors. Id. at 22-23.

    As with the earlier issue of the Indemnitors' failure to post collateral, this Court largely concurs with the Sureties and disagrees with the Magistrate on irreparable harm. Numerous district courts have observed that denying a surety access to an indemnitor's financial records leaves the surety "in the dark" as to whether the indemnity agreement will be fulfilled, not capable of determining whether the surety is fulfilling its own obligations, powerless to ascertain and mitigate further loss exposure, unfit in evaluating bond claims from subcontractors, unable to determine when to move for further injunctive relief,

and clueless as to whether the indemnitors continue to possess necessary assets. *See, e.g.*, RLI Ins. Co. v. Nexus Servs., Inc., 2018 WL 3244413, at *9 (W.D. Va. 2018) ("The persuasive case law from several federal jurisdictions...convinces the court that a loss of right to review books, records and accounts connotes irreparable harm"); Hanover, 2012 WL 2368328 at *14; XL Specialty Ins. Co. v. Truland, 2014 WL 4230388, at *4 (E.D. Va. 2014); Great Am. Ins. Co. v. Glob. Team Elec., LLC, 2020 WL 2527034, at *7 (W.D.N.C. 2020); Frankenmuth Mut. Ins. Co. v. Nat'l Bridge Builders, LLC, 2023 WL 3589690, at *15 (W.D.N.C. 2023); Philadelphia Indem. Ins. Co. v. DB Booneville, LLC, 2024 WL 4016373, at *6 (S.D. Iowa 2024); W. Sur. Co. v. Futurenet Grp., Inc., 2016 WL 3180188, at *7 (E.D. Mich. 2016). This is the all the truer when, as here, such access has been enshrined in the indemnity agreement. *See* (Docket No. 63-4 at 3) ("[a]t any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts"). Courts typically hold that the protections proffered by immediate access to books and records cannot be replaced by money damages in the future. RLI Ins. Co., 2018 WL 3244413 at *9; *see also* Hanover, 2012 WL 2368328 at *14.

In the case at bar, the Sureties presently suffer the same harms detailed by the aforementioned persuasive authorities, above

and beyond the obvious prospect of possible economic harm in the future. The irreparable harm caused by the Sureties' current inability to access the Indemnitors' books and records thus cannot be remedied by later monetary relief. Granting the Sureties preliminary injunctive relief with respect to access to the Indemnitors' books and records has the added benefit of concurring with the bargained-for terms of the indemnity agreement. *See* (Docket No. 63-4 at 3). Thus, this Court rules that the Sureties have shown irreparable harm and so rejects the Magistrate's recommendation.

Once more, the Court's finding of irreparable harm weighs the balancing test heavily in favor of granting relief. *See* <u>McGuire</u>, 260 F.3d at 42 (requiring consideration of likelihood of success on the merits, irreparable harm, burdens on the movants and nonmovants, and the public interest). The Magistrate correctly finds that the indemnity agreements "contain provisions that clearly state Defendants are obliged to provide Plaintiffs with reasonable access to their books and records," and so the likelihood of success on the merits is in the Sureties' favor. (Docket Nos. 63 at 32-33, 63-4 at 3). The Magistrate also correctly discerns that the balance of the equities favors the Sureties, since the Indemnitors have been unable to articulate any burden they suffer from providing reasonable access to their books and records. (Docket No. 63 at 37). Lastly, as was the case for the

collateralization analysis, the public interest factor is in the Sureties' favor since the enforcement of indemnity agreements is in the interest of the public. Id. at 30-31, 37. Accordingly, with the likelihood of success, irreparable harm, balance of equities, and public interest factors all in the Sureties' favor, the Court concludes that preliminary injunctive relief is appropriate. The Indemnitors are ordered to provide the Sureties with the reasonable access to books, records, and accounts that is demanded by the parties' indemnity agreements.

### III. CONCLUSION

The Court hereby **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's recommendation (Docket No. 63). The Court hereby **ACCEPTS, ADOPTS,** and **INCORPORATES** by reference the Magistrate Judge's sections on Procedural Background, Findings of Fact, the Indemnitors' *Motion to Dismiss*, the Indemnitors' arguments based on Colorado River abstention, and analysis of the likelihood of success on the merits and the public interest for the Indemnitors' (a) failure to deposit collateral, and (b) refusal to provide access to books and records. (Docket No. 63). The Court respectfully **REJECTS** the Magistrate Judge's analysis as to irreparable harm for the Indemnitors' (a) failure to deposit collateral, and (b) refusal to provide access to books and records.

Accordingly, the Indemnitors' *Motion to Dismiss* is **DENIED**. (Docket No. 48). The Sureties' *Motion to Compel* is **GRANTED IN PART**

Civil No. 24-1538(RAM)                                                    22

and the Indemnitors are instructed to (1) deposit collateral with Zurich, on behalf of the Sureties, in the amount of $2,676,471.31, and (2) provide the Sureties with the reasonable access to books, records, and accounts that is demanded by the parties' indemnity agreements.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 2nd day of February 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge