**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ZURICH AMERICAN INSURANCE
COMPANY, ET AL.

    **Plaintiffs**

           v.

L.P.C.&D., INC. ET AL.

    **Defendants**

**CIVIL NO.** 24-1538 (RAM)

## OPINION AND ORDER

This matter comes before the Court on Defendants L.P.C.&D., Inc. ("LPCD"), Las Piedras Construction Corp. ("Las Piedras"), Tejo, Inc. ("Tejo"), Equipment Depot, Inc. ("EDI"), Kane Caribbean, Inc. ("KCI"), Piezas Extra, Inc. ("PEI"), Equipos de Boquerón, Inc. ("EBI"), Caribbean Raceway Park, Inc. ("CRP"), Hacienda Cuco, Inc. ("HCI"), and Pedro Feliciano Benítez ("Feliciano Benítez") (collectively, "Defendants" or "Indemnitors")'s *Urgent Motion to Stay Enforcement of Preliminary Injunction Pending Appeal* (the "*Motion*"). (Docket No. 103). The Court **DENIES** the *Motion* and declines to stay the Indemnitors' obligations to: (1) deposit collateral with Zurich American Insurance Company ("Zurich"), on behalf of Plaintiffs Zurich, Fidelity and Deposit Company of Maryland ("F&D"), XL Specialty Insurance Company ("XLS"), and XL Reinsurance America, Inc. ("XLR") (collectively, "Plaintiffs" or "Sureties"); and (2)

provide the Sureties with the reasonable access to books, records, and accounts demanded by the parties' indemnity agreements. (Docket No. 73 at 21-22).

The Indemnitors' *Motion* petitions the Court for a stay of the preliminary injunctive relief it awarded to the Sureties in its Opinion and Order at Docket No. 73, id., pending the resolution of the Indemnitors' appeal before the United States Court of Appeals for the First Circuit. (Docket No. 103 at 1).

"While an appeal is pending from an interlocutory order or final judgment that grants...an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). However, the grant of a stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review" and relief is not granted as "a matter of right." New York v. Trump, 133 F.4th 51, 65 (1st Cir. 2025) (quoting Nken v. Holder, 556 U.S. 418, 427 (2009)). The Indemnitors bear "the burden of demonstrating that they are entitled to the extraordinary relief that they seek." Rhode Island v. Trump, 155 F.4th 35, 41 (1st Cir. 2025) (quoting Somerville Pub. Schs. v. McMahon, 139 F.4th 63, 68 (1st Cir. 2025)) (internal quotation marks omitted). The First Circuit has consistently used the Nken test to determine the propriety of staying a preliminary injunction pending appeal. *See, e.g.,* Rhode Island v. Trump, 155 F.4th at 41 (quoting Nken, 556

U.S. at 434). Applied here, the Nken test asks: (1) whether the Indemnitors have made a "strong showing" of their likelihood of success on the merits; (2) whether the Indemnitors will be irreparably harmed absent the stay; (3) whether substantial injury accrues to the Sureties on account of the stay; and (4) where the public interest lies. Nken, 556 U.S. at 434.

The likelihood of success lies with the Sureties.[1] As outlined in the Court's Opinion and Order at Docket No. 73, persuasive case law and other authorities point clearly in the direction of recognizing that a surety's loss of its bargained-for collateral is not a mere remediable monetary injury. (Docket No. 73 at 15). The Court's view accords with the law of suretyship and the advice of the Restatement (Third) of Suretyship and Guaranty. RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 21. The dominant trend in the case law favors the course this Court has charted. *See, e.g.*, Safeco Ins. Co. of Am. v. Schwab, 739 F.2d 431, 433 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of

---

[1] The Indemnitors' argumentation as to the likelihood of success on the merits relies on the "serious legal question" or "substantial case on the merits" standard borrowed from other circuits, as opposed to the "requisite strong showing" standard for likelihood of success required in this Circuit. *See, e.g.*, Rhode Island v. Trump, 155 F.4th at 42 (quoting Nken, 556 U.S. at 434) (internal quotation marks omitted). In the First Circuit, the likelihood of success on the merits is **the** indispensable ingredient necessary to a preliminary injunction finding. New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) ("[t]he sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity"); Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 16 (1st Cir. 2002) ("[t]he sine qua non [of the stay pending appeal standard] is whether the [movants] are likely to succeed on the merits") (quoting Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).

Civil No. 24-1538(RAM)                                                      4

collateral security clauses"); Merchs. Bonding Co. (Mut.) v. Ark.
Constr. Sols., LLC, 2019 WL 452767, *4 (W.D. Ark. 2019) ("In the
Court's view, there are more district courts that come down
squarely on the side of granting preliminary injunctive relief in
indemnity agreement cases"). District courts surveying the case
law from across the country have observed that "an overwhelming
majority of district courts" have sided with sureties in ordering
indemnitors to furnish collateral. Argonaut Ins. Co. v. Summit
Concrete, Inc., 647 F. Supp. 3d 1228, 1233 (N.D. Ala. 2022)
(collateralization "is necessary to protect...the bargained-for
benefit of collateral security, avoidance of present exposure to
liability during pending litigation against indemnitors, and
avoidance of risk that...the surety will be left as a general
unsecured creditor"). Other courts' review of the precedent has
remarked that "case law nationwide has recognized the right of a
surety to use the equitable remedy of specific enforcement to
secure collateralization." Auto-Owners Ins. Co. v. Randy B. Terry,
Inc., 2013 WL 6583959, at *6 (N.D. Ala. 2013). Similarly, other
districts have noted that courts "routinely" find that "sureties
suffer immediate, irreparable harm if they are denied receipt of
collateral," and "generally" grant "specific performance to
enforce collateral security clauses based on the premise [that]
such remedy is required to protect the surety's bargain." Great
Am. Ins. Co. v. SRS, Inc., 2011 WL 6754072, at *8 (M.D. Tenn.

Civil No. 24-1538(RAM)                                                    5

2011); Liberty Mut. Ins. Co. v. Nat'l Pers. of Texas, Inc., 2004 WL 583531, at *2 (N.D. Tex. 2004).

With this finding of the Sureties' likelihood of success on the merits in tow, the remaining factors are little more than "idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). For the sake of completeness, the Court explores the remaining three factors below.

The Indemnitors will not be irreparably harmed by being required to deposit collateral or provide the Sureties with access to books. (Docket No. 73 at 21-22). As to the Indemnitors' complaint about the "forced disgorgement of $2.68 million in cash," there is no "irreparable injury where only money is at stake and where the [affected party] has a satisfactory remedy at law to recover the money at issue." Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986). That is true of deposited collateral.

Similarly, to the extent that the Indemnitors fear "irreversible disclosure" and the forfeiture of "privacy and informational interests" were the Sureties to inspect their books, these concerns may be mitigated through a separate protective order. Fed. R. Civ. P. 26(c) exists for this purpose and authorizes the protection of confidential commercial information by requiring that such information "not be revealed or be revealed only in a specified way." See also Fed. Open Mkt. Comm. of Fed. Rsrv. Sys.

_v. Merrill_, 443 U.S. 340, 363 (1979) ("orders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel"); 2 Edward J. Imwinkelried, _The New Wigmore: A Treatise on Evidence: Evidentiary Privileges_ § 9.2.3 (explaining how, in most cases, a judge can balance the need for information with the need for secrecy through a protective order by "by carefully tailoring the terms of the protective order to the needs of the case"). The Court also notes that the indemnity agreement between the parties in the case at bar specifically enshrined the Sureties' right to reasonable access to the Indemnitors' books. _See_ (Docket No. 63-4 at 3) ("[a]t any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts"); _see also_ (Docket No. 2-1 at 1) (indemnity agreement under which the Indemnitors agreed to deposit collateral with the Sureties "as soon as liability exists or is asserted"). "It is no appropriate part of judicial business to rewrite contracts freely entered into between sophisticated business entities." RCI Ne. Servs. Div. v. Bos. Edison Co., 822 F.2d 199, 205 (1st Cir. 1987).

A stay in this context will necessarily injure the Sureties. As discussed above and in the Court's Opinion and Order at Docket No. 73, the Sureties suffer the injury of not just future dollars

paid, but also the infliction of an unbargained-for risk of loss as well as the annulment of the contractual right to immediate collateral that they **did** acquire. (Docket No. 73 at 10). As well, the Indemnitors' briefing on this point rests on the assumption that adequate security for the Sureties "already exists" because of a sum allegedly deposited as "retainage" by the Puerto Rico Aqueduct and Sewer Authority ("PRASA") in related state court litigation. (Docket Nos. 63 at 35 n.28, 103 at 9-10). The Court cannot credit this assertion for four separate reasons.

First, Magistrate Judge Lopez's Report and Recommendation ("R & R") explicitly considered the argument that the Indemnitors restate here, ruling that it was not sufficiently developed to warrant judgment:

> During the hearing, Defendants inquired about the fact that PRASA deposited a four million three hundred thousand dollar ($4,300,000.00) retainage amount in the state court for its liability in the Soletanche Litigation, which Plaintiffs did not consider during the calculations for their loss reserve. ECF No. 58, Evid. Hrg., Aug. 20, 2025, at 1:40:39-1:41:58. Defendants attempted to argue that Plaintiffs should have considered this deposit when calculating their reserves as it would impact the exposure risk Plaintiffs are facing. 3:45:46-3:46:17, 3:46:40-3:47:25. However, Defendants failed to explain why the retainage amount PRASA deposited to cover its liability in the Soletanche Litigation should have been considered by Plaintiffs when calculating their exposure risk, when the Appellate Judgment clearly separates the liability amount PRASA faces from the liability amount LPCD and the Sureties face.

Civil No. 24-1538(RAM)                                                      8

> Exhibit 5-t at p. 69. In fact, neither party elaborated this point during the hearing, nor have they provided information, written or otherwise, of the impact, if any, it has on Plaintiffs' exposure risk. ECF No. 58, Evid. Hrg., Aug. 20, 2025, at 3:47:31-3:47:46, 3:47:55-3:48:02, 3:48:55-3:49:09. With this limited information, a determination cannot be made in this regard.

(Docket No. 63 at 35 n.28)

The proper stage to contest the Magistrate's conclusion came when the Indemnitors filed their *Objection* to the R & R. (Docket No. 71). In it, they are altogether silent as to the question of funds under judicial custody in state court. Id.

Second, even putting that waiver aside, the record continues to remain undeveloped. For completeness, the Court has reviewed it. The Indemnitors do not attach to their *Motion* any Commonwealth court order conclusively establishing that PRASA funds are presently earmarked for the Sureties, legally reachable by them, or free of competing claims. Instead, the Indemnitors reiterate the argument rejected by the Court in denying their *Motion for Reconsideration*. (Docket No. 103 at 8). The Indemnitors have not answered the Magistrate's query as to why a retainage amount deposited by PRASA to cover its liability in a Commonwealth court should be considered relevant to the Sureties' exposure. (Docket No. 63 at 35 n.28). For their part, the Sureties have represented, in their *Opposition* to the Indemnitors' *Motion for Reconsideration*, that the motion for execution of judgment

relevant to the PRASA funds remains pending in Commonwealth proceedings. (Docket No. 93 at 6). The Indemnitors attach no evidence of a final resolution to the contrary.

Third, the Indemnitors' own language confirms the speculative nature of their position. They state only that "approximately $3,366,305.40 remains **potentially** available for L.P.C.&D., Inc. or its sureties." (Docket No. 103 at 9) (emphasis added). Potential availability does not equal collateral security. Neither does this sort of potentiality establish that the Sureties presently possess collateral equivalent to what the Court has concluded they are entitled to from the Indemnitors.

Fourth, even if these PRASA funds exist in the manner claimed by the Indemnitors, they are under the purview of the Puerto Rico courts. Under longstanding Supreme Court precedent, the state or federal court that first acquires jurisdiction "draws to itself the exclusive authority to control and dispose of the res." Kline v. Burke Const. Co., 260 U.S. 226, 235 (1922). "[B]oth courts cannot possess or control the same thing at the same time, and any attempt to do so would result in unseemly conflict." Id. It is unclear, therefore, how the Indemnitors expect this District Court to make use of a sum allegedly deposited as "retainage" by a third party in Commonwealth court litigation.

Given the above, the public interest does not favor a stay. Enforcing the clear contractual obligations at issue in this case

Civil No. 24-1538(RAM)                                                    10

is in the interest of the public, as is respecting the jurisdiction of the Commonwealth courts over funds in their custody.

The Court **DENIES** the *Motion* and declines to stay the Indemnitors' obligations to (1) deposit collateral with Zurich in the amount of $2,676,471.31, and (2) provide the Sureties with reasonable access to books, records, and accounts.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 5th day of May 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge